## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

DAVID L. TUSH,

        Petitioner,

v.

        Case No. 17-CV-452-JFH-KEW

SCOTT CROW,[1]

        Respondent.

### OPINION AND ORDER

This matter comes before the Court on a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Dkt. No. 1. Petitioner David L. Tush ("Tush") is a prisoner proceeding *pro se*. He is currently in the custody of the Oklahoma Department of Corrections ("ODOC") and confined in the Lawton Correctional Facility in Lawton, Oklahoma. He challenges his conviction and sentence in Adair County District Court (Case No. CF-2014-64), for Assault and Battery with a Dangerous Weapon After Former Conviction of a Felony. After a jury trial, the court sentenced Tush to forty-three (43) years imprisonment.[2] For the reasons set forth below, Tush's Petition for Writ of Habeas Corpus [Dkt. No. 1] is **DENIED**.

---

[1] Petitioner is incarcerated in a private facility. The proper respondent is Scott Crow, Director of the Oklahoma Department of Corrections. *See* Rule 2(a) of the Rules Governing Section 2254 Cases; *Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 494-95 (1973). The Clerk of Court shall note this substitution on the record.

[2] Tush also pleaded guilty to one count of Possession of a Firearm After Former Conviction of a Felony. He was sentenced to ten years imprisonment on that count. He does not challenge that guilty plea in his Petition for Writ of Habeas Corpus.

## STATEMENT OF FACTS[3]

Victim Amanda Torix ("Torix") testified that on March 27, 2014, she lived in Westville, Oklahoma, with her boyfriend, Tush.  Also living at the residence were Tush's brother, Scotty Tush, and Lisa Lawson ("Lawson").  Around 3:00 a.m., Tush wanted Torix to engage in sexual activity with Lawson.  Torix testified she objected and Tush became angry and began hitting her.  Lawson attempted to leave the bed, but Tush ordered Lawson to return to the bed or he would kill Torix.  Lawson returned to the bed and engaged in sexual intercourse with Tush.  Torix did not participate, which further angered Tush.  He then began hitting Torix with a flashlight.

Later that morning, Tush, his brother Scotty Tush, and Torix left the residence in Torix's vehicle.  Tush drove them to Stephanie Mennecke's ("Mennecke") house.  She was not home.  Tush picked up a table leg from the porch and beat Torix with it.  He told her not to scream, and he would kill anyone that came to help.  Tush told his brother Scotty Tush that he was planning to take Torix into the woods to kill her.  At about the same time, Mennecke arrived at her home.  At the demand of Tush, Torix hid her bruised and battered face from Mennecke.

Tush, Torix, and Scotty Tush, left Mennecke's house and drove back roads.  Tush stopped the car in a wooded area, dragged Torix out of the car, jumped on her, stomped on her neck, and hit her repeatedly with a baseball bat.  Tush put Torix back into the car and drove back to his home.  She climbed into bed and pretended she was dead.  She heard Tush state that he thought Torix was dead.  Tush and his brother left the residence.  At some point thereafter, Torix managed to flee to a neighbor's house.  The neighbor called 911.

---

[3] Summarized from the trial transcript submitted by the State of Oklahoma as an attachment to the Response to the Petition for Writ of Habeas Corpus. Dkt. No. 10-8.

## PROCEDURAL HISTORY

With assistance of counsel, Tush filed a direct appeal in the Oklahoma Court of Criminal Appeals ("OCCA") arguing his conviction and sentence should be overturned because:

I.      The prosecutor deprived appellant of a fair trial by introducing irrelevant evidence (regarding whether Tush attempted to flee during his arrest) designed to prejudice the jurors against him; and

II.     The trial court's answer to one of the jury's questions improperly injected parole consideration into the jury's deliberation and resulting sentence.

Dkt. No. 10-1. The OCCA affirmed Tush's conviction, finding that the challenged evidence in Ground I of his appeal was relevant and admissible. Regarding Ground II, the OCCA found the trial court did err in answering the jury's question, but the error "was harmless beyond a reasonable doubt." Dkt. No. 10-3.

Tush filed a *pro se* Application for Post-Conviction Relief in the trial court, pursuant to Okla. Stat. tit. 22, § 1080, on April 3, 2017, raising the following grounds for relief:

I.      Tush's trial counsel was ineffective.

    a.  Counsel failed to make a hearsay objection from OSBI agent testimony about witness Scotty Tush's out of court statements;

    b.  Counsel failed to ask state's witness Lawson about the agreement she made with the prosecution in exchange for her testimony; and

    c.  Tush's appellate counsel was ineffective for failing to raise the issue of trial counsel's ineffectiveness.

II.     The prosecution failed to disclose agreements made with witnesses in exchange for their testimony against Tush.

III.    Evidentiary "harpoons" by state witnesses and other evidentiary issues deprived Tush of a fundamentally fair trial.

IV.     Under the federal Major Crimes Act, 18 U.S.C. § 1153, the state court did not have personal jurisdiction over Tush or subject matter jurisdiction over the case.

Dkt. No. 10-4.

The trial court denied post-conviction relief on September 15, 2017. Dkt. No. 10-5. Regarding Tush's ineffective assistance of trial counsel arguments raised in Ground I, the trial court found that Tush should have raised those on direct appeal. The court further denied Tush's ineffective assistance of appellate counsel arguments, finding that appellate counsel was not ineffective for failing to raise the ineffective assistance of trial counsel on appeal. The trial court reasoned that Tush failed to establish any acts of either trial or appellate counsel that deprived him of a fair trial.

Concerning Ground II, the trial court also denied Tush's claim (that he was entitled to post-conviction relief because the prosecutor offered plea agreements to individuals who subsequently testified against him) on the ground that Tush should have raised this issue on direct appeal. Because he did not do so, he waived that claim. The trial court summarily denied Grounds III and IV, stating, "[i]t is therefore ordered that Petitioner's Application for Post-Conviction Relief is hereby denied in all respects." Dkt. No. 10-5.

Tush filed a petition in error to the OCCA, arguing that the trial court erred in denying him post-conviction relief. Dkt. No. 10-6. Tush argued:

I.    The trial court abused its discretion in denying Tush's request to appoint counsel at the evidentiary hearing;

II.   The trial court abused its discretion in denying Tush a continuance to respond to the state's brief;

III.  The trial court abused its discretion in failing to call his requested witness to the evidentiary hearing;

IV.   The trial court abused its discretion at the evidentiary hearing by not serving summons on Petitioner's other witnesses;

V.    The trial court incorrectly found that he received effective assistance of trial counsel;

VI.     The trial court incorrectly found that he received effective assistance of appellate counsel;

VII.    His Sixth and Fourteenth Amendment rights were violated; and

VIII.   The application for post-conviction relief should be remanded to consider propositions three and four, which it summarily dismissed.

The OCCA declined jurisdiction and dismissed the appeal as follows:

> Petitioner's request for post-conviction relief was denied by the District Court in an order filed September 15, 2017. The Clerk of this Court cannot file appeals without an appropriate filing fee or without an order granting leave to file without costs. *See* Rules 1.10 and 1.11, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App (2017) and 20 O.S. 2011, § 38. The Petition in Error was not timely filed as the pauper's affidavit was not received until October 20, 2017, and Petitioner's application was due on or before October 15, 2017. Petitioner failed to timely file the Petition in Error with the Clerk of this Court within thirty (30) days from the filing date of the district Court's final order. *See* Rule 5.2(C)(2), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2017). The Court **DECLINES** jurisdiction and **DISMISSES** this matter. If Petitioner feels he has been denied a post-conviction appeal through no fault of his own, he may seek the appropriate relief with the District Court. *See* Rule 2.1 (E)(3), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2017).
>
> CONCUR: Lumpkin, P.J.; Lewis, P.J.; Kuehn, J.

Dkt. No. 10-7 at 2.

Nothing in the record indicates Tush returned to the trial court requesting leave to appeal out of time pursuant to Rule 2.1(E)(3) or demonstrating that his failure to timely file in the OCCA was through no fault of his own.

Instead, Tush filed the instant Petition for Writ of Habeas Corpus in this Court on December 11, 2017, challenging the conviction and sentence on the following grounds:

I.      Trial counsel was ineffective;

II.     Appellate counsel was ineffective;

III.    Evidentiary errors violated Tush's right to a fair trial;

IV.     The trial court lacked jurisdiction to try him;

V.      The prosecutor deprived him of a fair trial by introducing irrelevant evidence; and

VI.     Due to the trial judge's erroneous answer to the jury's question, the jury improperly considered parole in its deliberations, resulting in an excessive sentence.

Dkt. No. 1.

The State of Oklahoma filed a response to Tush's Petition for Writ of Habeas Corpus. Dkt. No. 10. Tush subsequently filed a "traverse" in reply, in which he argues cause exists to justify the procedural default on his appeal of the denial of post-conviction relief. Dkt. No. 12.

## LEGAL STANDARDS

Under 28 U.S.C. § 2254, federal district courts have jurisdiction to hear claims from state prisoners that their convictions were obtained in violation of the United States Constitution. A petition for writ of habeas corpus will be granted only if the state court's adjudication of the claim:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d).

A habeas court will first analyze whether federal law "was clearly established by the Supreme Court at the time of the state court judgment." *Byrd v. Workman*, 645 F.3d 1159, 1165 (10th Cir. 2011). A state court's judgment is "contrary to" federal law where "the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts." *Id.* (citing *Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004)). An unreasonable application of federal law occurs where the state court identifies the proper controlling legal principle but "unreasonably applies" the law to the facts of the defendant's case. *Id.*

6

## I.   <u>Exhaustion</u>

Exhaustion is a threshold issue in a habeas case.  Under the federal statute, a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."  28 U.S.C. § 2254(c).  The doctrine serves to avoid a federal court's involvement in overturning a state court conviction before the state has an opportunity to address and correct a constitutional violation.  *See Davila v. Davis*, 137 S.Ct. 2058, 2064 (2017).  A habeas petitioner must "give state courts a fair opportunity to act on their claims."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).  This requires that a prisoner give the state court "a full opportunity to resolve constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 845.  A prisoner must "fairly present" each claim raised in a petition for writ of habeas corpus to the courts in the state of conviction.  State courts are first granted the opportunity to "correct alleged violations" of constitutional magnitude before those claims may be heard in federal court.  *Duncan v. Henry*, 513 U.S. 364, 365-366 (1995) (per curiam).  The purpose of habeas review is to "guard against extreme malfunctions in the state criminal justice systems" not as "a substitute for ordinary error correction" through appeal in state court.  *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979) (Stevens, J., concurring in judgment)).

## II.   <u>Procedural Default</u>

The doctrine of procedural default is an "important corollary" to the doctrine of exhaustion.  *Davila*, 137 S.Ct. at 2064.  Both doctrines serve to advance the interests of comity, finality, and federalism.  *Id.*

> "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for

presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance."

*Id.* (quoting *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)).

Federal courts sitting in habeas will not review federal claims decided by a state court "if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 729. In application, the "independent and adequate state law ground" doctrine bars a federal court from addressing a prisoner's federal claims on the merits when "the prisoner has failed to meet a state procedural requirement." *Id.* at 730. "[I]n a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Id.* at 731. "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance. *Id.* at 732.

## DISCUSSION AND ANALYSIS

I.      **Grounds I, II, III, and IV of Tush's Petition for Writ of Habeas Corpus are Unexhausted and Procedurally Barred**

Turning to the procedural facts of Tush's application for post-conviction relief, it is evident the four (4) claims raised in his application for post-conviction relief (which correspond to Grounds I, II, III, and IV in his Petition for Writ of Habeas Corpus) are both unexhausted and procedurally defaulted. The trial court issued its order denying Tush's application for post-conviction relief on September 15, 2017. Under the OCCA's rules of filing, Tush had thirty (30) days in which to file his appeal. Tush's Petition in Error was not timely filed because the OCCA did not receive the required pauper's affidavit until October 20, 2017, five (5) days too late. Thus, the OCCA declined jurisdiction to hear the appeal and dismissed the matter. Because the OCCA's reason for declining to hear his appeal was based on an "independent and adequate" state

procedural rule, all four (4) of the claims raised are procedurally defaulted. That is, Tush did not properly raise his claims in state court, so they are barred from federal habeas review.

It is significant that the OCCA told Tush specifically how to raise a claim and, thus, it cannot be said that the procedural default was caused through no fault of his own. Nothing exists in the record to indicate that Tush returned to the trial court with a filing that would explain how the late filing of the pauper's affidavit was not his fault. Had Tush followed those directions and returned to the trial court seeking leave to appeal out of time, regardless of outcome, he could have preserved all of those issues for habeas review. Instead, by prematurely jumping to federal court, he failed to give the state courts the opportunity to review his claim that cause existed for his untimely filing. Thus, the four (4) claims are also unexhausted, and this Court will not consider them on the merits. Whether characterized as procedural default or failure to exhaust (or both), Tush's claims are barred here because he failed to allow the courts of the State of Oklahoma the opportunity to address his claims before he filed in federal court.

## II.     **Tush Cannot Overcome the Procedural Default**

Because Tush's claims are procedurally barred, Tush's only avenue for federal review of his claims would be to demonstrate "cause for the default and actual prejudice as a result," *Coleman*, 501 U.S. at 750, or to demonstrate that a failure to consider his claims "will result in a fundamental miscarriage of justice."[4]  To demonstrate cause, a petitioner must show "an objective

---

[4]  The fundamental miscarriage of justice exception requires a showing of "actual innocence" which the high court defines as a showing "that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995).  This showing requires "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *House v. Bell*, 547 U.S. 518, 537 (2006) (quoting *Schlup*, 513 U.S. at 324).  A showing of "actual innocence" is exceedingly rare and "permits review only in the 'extraordinary' case." *House*, 547 U.S. at 538 (quoting *Schlup*, 513 U.S. at 327).

factor external to the defense" prevented compliance with the state's procedural rule. This occurs when the failure to comply "cannot fairly be attributed" to the prisoner. *Davila*, 137 S.Ct. at 2065.

The Court notes that in the traverse filed Tush did attempt to explain that the prison did not provide him with his statement of account in time for him to meet the OCCA's deadline for filing his pauper's affidavit. This explanation, however, regards only his failure to timely file in the OCCA. It does not speak to his failure to follow the OCCA's direction to return to the trial court to show how the untimely filing was not his fault. Herein lies the crux of the problem. Tush did not give the Oklahoma courts the opportunity to evaluate his alleged "cause" for the default. Tush's claim of cause should have been raised in state court. By failing to do so, Tush has procedurally defaulted his claim of cause.

To show cause in order to overcome that default (i.e. failing to request an untimely appeal from the trial court) in this habeas context, Tush would have to demonstrate that some external impediment prevented him from returning to the trial court as directed. He has made no such showing and has not even provided this Court with an argument as to why he was unable to do so. Thus, he has not shown cause and prejudice for the default that would compel this Court to review these claims on their merits. Moreover, this Court finds nothing in the record to support a contention that Tush was so prejudiced as to constitute a "fundamental miscarriage of justice," nor has he presented new evidence to support a claim that he is "actually innocent" of the offense. Accordingly, Grounds I, II, III, and IV of this Petition for Writ of Habeas Corpus are procedurally defaulted and, therefore, **DENIED**.

Having defaulted all four (4) claims raised in the appeal of his denial of post-conviction relief, the Court is left with only the two (2) claims Tush raised in his direct appeal that are fully exhausted and cognizable in this habeas action. Those two (2) claims, that (1) the prosecutor

introduced irrelevant evidence designed to prejudice the jurors against him (Habeas Ground V), and (2) that the court's improper answer to a jury question caused the jury to give him an excessive punishment (Habeas Ground VI) will therefore be reviewed on the merits.

### III.  Ground Five:  Prosecutorial Misconduct

In Ground V of his Petition for Writ of Habeas Corpus, Tush contends that the prosecutor deprived him of a fair trial by introducing irrelevant evidence.  During trial, testimony and evidence were introduced regarding the circumstances of Tush's arrest for the charged offenses. Arresting officers testified that Tush attempted to flee out the back door of the duplex when authorities entered through the front door.  The prosecution introduced as an exhibit Tush's wallet that remained in the house after he fled through the back door.  The defense objected to the relevance of the wallet.  The following colloquy occurred:

> State:  Judge, I would move for admission of State's Exhibit 36.
>
> Defense counsel:  I would just object that it's not relevant, Judge.  I don't know what it's probative of.
>
> Court:  And I don't see it either.
>
> State:  Judge, I mean, it's corroborative of the testimony of Sheriff Hardin, obviously, as far as apprehension, of the defendant's presence there, his personal belongings.
>
> Defense counsel:  Sheriff Hardin testified that Mr. Tush was arrested at that residence.
>
> State:  Correct.  And it's corroborative of – could we approach, Your Honor?
>
> Court:  Yeah.
>
> (THE FOLLOWING PROCEEDINGS WERE HELD AT THE BENCH, OUTSIDE THE HEARING OF THE JURY.)
>
> Court:  What are you trying to get?
>
> State:  Evidence of flight, him bailing out the back door.

11

Defense counsel:  Well, Hardin testified that he turned around and ran back in, but he had laid down, and I don't know what – this is, kind of, duplicative.

Court:  I think you're wasting this jury's time, with all the stuff that you just put in there, and you're trying to throw up a ruse, and I don't want you to do it.

I'll go ahead and overrule your objection and show it admitted.

But you need to be careful.

State:  Okay.

(THE FOLLOWING PROCEEDINGS WERE HELD IN OPEN COURT, WITHIN THE HEARING OF THE JURY.)

Court:  Show it admitted—over the defense's objection

State:  Thank you, Your Honor.

Dkt. No. 10-8 at 314-15.  In closing argument, the State summarized the testimony of Sheriff Hardin.  Dkt. No. 10-8 at 36.

Despite the trial court's admission of the wallet and unambiguous overruling of the defense's objection, Tush argued on direct appeal the trial court's statements, "I don't see it either" (meaning relevance of the exhibit) and "I think you're wasting the jury's time" demonstrate the trial court did not believe the wallet was relevant evidence.  Dkt. No. 10-1 at 7.

The OCCA disagreed, finding,

As to proposition I, brief testimony about Appellant's attempt to avoid apprehension was relevant and admissible to show consciousness of guilt. Appellant did not object to this testimony, or to the prosecutor's brief reference to it in closing argument, and we find no error, plain or otherwise.  Although Appellant did object to the admission of certain physical evidence (including his wallet) which was obtained incident to his arrest, he fails to suggest how any of that evidence was even potentially prejudicial to him, and we decline to grant relief absent any demonstrable prejudice.  Proposition I is therefore denied.

Dkt. No. 10-3 at 1-2 (citations omitted).

Improper prosecutorial comments rise to the level of a constitutional violation only when the remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)). In reviewing claims of improper remarks by a prosecutor, a court sitting in habeas is directed to look at the "totality of the circumstances" in which the comments were made, *Smallwood v. Gibson*, 191 F.3d 1257, 1276 (10th Cir. 1999), and to view the comments "within the context of the trial as a whole," *Duvall v. Reynolds*, 139 F.3d 768, 794 (10th Cir. 1998).

> To view the prosecutor's statements in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution. We also ascertain whether curative instructions by the trial judge, if given, might have mitigated the effect on the jury of the improper statements . . . . Ultimately, we must consider the probable effect the prosecutor's [statements] would have on the jury's ability to judge the evidence fairly.

*Cummings v. Evans*, 161 F.3d 610, 618 (10th Cir. 1998) (quoting *Hopkinson v. Shillinger*, 866 F.2d 1185, 1210 (10th Cir. 1989)).

A prosecutor is granted a "reasonable amount of latitude in drawing inferences from the evidence during closing summation." *Duvall*, 139 F.3d at 795. Even where improper comments are made, they take on constitutional dimension only when they are so egregious as to render the trial fundamentally unfair. *United States v. Hernandez-Muniz*, 170 F.3d 1007, 1012 (10th Cir. 1999); *see also Hooper v. Mullin*, 314 F.3d 1162, 1172 (10th Cir. 2002).

This Court finds the OCCA's determination regarding Tush's challenged evidence and closing arguments was not contrary to or an unreasonable application of Supreme Court precedent. There were multiple witnesses who testified Tush severely and repeatedly beat Torix. In light of that significant evidence and the wide latitude given a prosecutor to draw inferences from evidence

13

presented during the trial, this Court cannot find that the prosecutors statements were so egregious as to render Tush's trial fundamentally unfair.  Moreover, both the trial court and the OCCA determined evidence regarding Tush's actions at his arrest were relevant and admissible.  The OCCA went so far as to say that challenged evidence was not even potentially prejudicial.

To the extent Tush is attempting to challenge the admission of testimony and evidence itself, such claims are not cognizable in the habeas context.  "Federal habeas relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).  In reviewing a federal habeas petition, the Court is "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *McGuire*, 502 U.S. at 68; *see also Montez v. McKinna*, 208 F.3d 862, 865 (10th Cir. 2000) ("claims of state law violations are not cognizable in a federal habeas action.").  Based on the foregoing, it cannot be said that the OCCA's determination was contrary to or an unreasonable application of federal law.  Consequently, Tush's Ground V is **DENIED** on the merits.

## IV.    Ground Six:  Excessive Sentence

During deliberation, the jury sent a note to the trial judge.  It stated:  "If we fix punishment as life how many years would he serve, 50 years, 25."  The judge responded, "A sentence of life is calculated by the Department of Corrections as 45 years."  The jury recommended a sentence of 43 years.  Tush alleges the judge's response was an improper statement of the law and caused the jury to improperly consider parole in their deliberations.  Dkt. No. 10-1 at 14-15.

On appeal, the OCCA determined:

We agree with Appellant's claim that the trial court's answer was a misunderstanding of the law and therefore error.  However, we cannot say the error worked to Appellant's detriment.  Nothing about the court's answer invited the jury to "over-sentence" Appellant to offset the possibility of early release via parole. Nor can we discern any other way in which the misinformation might have skewed

14

the sentence range unfavorably to Appellant. The trial court's erroneous answer was harmless beyond a reasonable doubt.

Dkt. No. 10-3 at 2-3 (footnote and citations omitted).

In its Response to the Petition for Writ of Habeas Corpus, the State of Oklahoma argues that Tush did not properly exhaust this claim because when he raised it on direct appeal, he did not couch it in terms of a complaint that his sentence was excessive. As a result, the State argues, the OCCA did not consider his excessive sentence claim. Dkt. No. 10.

*Pro se* pleadings should be "liberally construed" and held to "less stringent standards than pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). On appeal, the OCCA unequivocally stated, "[n]othing about the court's answer invited the jury to 'over-sentence' Appellant to offset the possibility of early release via parole." While Tush's appellate counsel did not specify his argument was one of an excessive sentence, the OCCA clearly read it that way. Regardless whether his appellate counsel did or did not use the term "excessive sentence" in the appeal brief, it is evident that the OCCA addressed the issue of "over-sentencing" in its opinion. Liberally construing Tush's claim, as required to do with a *pro se* pleading, the Court finds that while the language was not identical, Tush was clearly attempting to raise in his habeas petition the same claim that had been reviewed by the OCCA regarding the response to the jury question and its effect on his sentence. As such, the Court will consider Tush's excessive sentence claim on the merits.

The Supreme Court recognizes the longstanding tradition of allowing state legislatures to make and implement policy decisions in sentencing. *See Ewing v. California*, 538 U.S. 11, 25 (2003) ("Selecting the sentencing rationales is generally a policy choice to be made by state legislatures, not federal courts."). This deference to legislative policy choices "finds a corollary in the principal that the Constitution 'does not mandate adoption of any one penological theory.'"

*Id.* (quoting *Harmelin v. Michigan*, 501 U.S. 957, 999 (1991)).  The Supreme Court holds the Eighth Amendment does not require strict proportionality between crime and sentence.  "Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime."  *Ewing*, 538 U.S. at 23 (quoting *Harmelin*, 501 U.S. at 1001).  In interpreting the Supreme Court jurisprudence, the Tenth Circuit has accorded "wide discretion" to state trial courts in sentencing matters, finding generally such challenges are not cognizable on habeas review unless a sentence is imposed "outside the statutory limits" or otherwise "unauthorized by law."  *Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th  Cir. 2000); *see also United States v. Gillespie*, 452 F.3d 1183, 1190 (10th Cir. 2006) ("Generally, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment.").

The OCCA found Tush's sentence was not excessive, nor was it "skewed" unfavorably to Tush.  For offense with a deadly weapon, the maximum sentence in Oklahoma is life.  *See* OKLA. STAT. tit. 21, § 652 (2017).  The court sentenced Tush to 43 years imprisonment, a sentence below the Oklahoma statutory maximum of life in prison.  It is true that the OCCA found the trial court erred in its response to the jury's question, but it found the error harmless.  Harmless error does not violate the Constitution.  The objective action of the jury—recommending a sentence within the State of Oklahoma's statutory range—passes constitutional muster.  Tush's contention that the jury acted improperly is mere speculation without any support in the record.  This Court cannot find, therefore, that the OCCA's holding was contrary to or an unreasonable application of federal law.  Accordingly, Ground VI of the Petition for Writ of Habeas Corpus is **DENIED** on the merits.

## CONCLUSION

In summary, Petitioner David L. Tush has not shown that he is in custody in violation of the Constitution.  The Court therefore denies Tush's Petition for Writ of Habeas Corpus [Dkt. No.

1]. Further, because Tush has not shown that reasonable jurists would debate this Court's assessment of his constitutional claims or its determination that some of his claims are procedurally barred, the Court **DENIES** a certificate of appealability.

**THEREFORE, IT IS HEREBY ORDERED** that:

1. The Clerk of Court shall note on the record the substitution of Scott Crow in place of Joseph Allbaugh as party respondent;

2. The Petition for Writ of Habeas Corpus [Dkt. No. 1] is **DENIED**;

3. A certificate of appealability is **DENIED**; and

4. A separate judgment shall be entered in this matter.

DATED this 22nd day of December, 2020.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE